■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v WILLIAM WAINWRIGHT, Respondent. [727 NYS2d 106] —Order, Supreme Court, New York County (Laura Drager, J.), entered February 3, 2000, which granted defendant's motion pursuant to CPL 330.30 (3) to set aside the jury verdict convicting him of criminal sale of a controlled substance in the third degree and

ordered a new trial, unanimously reversed, on the law, the motion denied and the verdict reinstated.

Following a fact-finding hearing, the jury verdict was set aside on the ground of newly discovered evidence, namely that new evidence was discovered since the trial which could not have been produced at the trial and which was of such character as to create a probability that, had such evidence been produced at trial, the verdict would have been more favorable to defendant (CPL 330.30 [3]). The evidence consisted of the testimony of Raymond Toomer, co-defendant in this heroin sale case. According to defendant, Toomer stated at the time of defendant's arrest that he had not acquired the heroin from defendant and this statement had been relayed to defendant's trial counsel, substituted for earlier counsel who had represented defendant for almost half a year.

At the post-trial hearing, Toomer testified that he has been a drug user since 1966; that he had a criminal record including three felony convictions at the time of defendant's trial; that he became acquainted with defendant by seeing him twice a week at a methadone maintenance program; that his memory of the circumstances surrounding his arrest was impaired due to being "stoned"; and, that whatever drugs were found on him on that date had been purchased on an earlier date from another, unidentified individual.

Defendant testified that during the year which elapsed between defendant's arrest and trial, although defendant believed Toomer would testify that no drugs had been obtained from him, defendant nonetheless made no effort to locate Toomer because he did not have Toomer's address; that defendant did not look in a telephone directory; that defendant did not ask any counselor at the methadone center about Toomer; that defendant did not tell his first attorney at all about Toomer's exculpatory statement; and, that defendant informed his trial attorney that Toomer was probably dead. Defendant testified that he told his trial attorney that Toomer was probably "dead" although his own understanding was that such a term was used to describe a person whose current whereabouts were merely unknown.

Defendant's trial counsel testified that he talked with defendant on five or six occasions prior to trial; that during the trial defendant first identified Toomer as a witness who would state that no sale had taken place; that defendant had then informed him that Toomer was probably dead; and, that, in any event, when it became clear that no prosecution witness would testify that money had been recovered from defendant, defendant agreed that no witness should be called.

It is abundantly clear from the record that defendant's interest in Toomer as a critical witness actually dates from encountering him in jail several weeks after his conviction.

To set aside a verdict it must be proven by defendant that there is newly discovered evidence (1) which will probably change the result if a new trial is granted; (2) which was discovered since the trial; (3) which could not have been discovered prior to trial; (4) which is material; (5) which is not cumulative; and, (6) which does not merely impeach or contradict the record evidence (*People v Salemi*, 309 NY 208, 215-216, *cert denied* 350 US 950). The court erred by setting aside the guilty verdict. Toomer's testimony was not newly discovered and probably would not change the result. Defendant did not use due diligence in locating Toomer prior to trial and the decision to forego further witnesses was a reasonable trial strategy of which defendant was apprized and to which he consented.

Although Toomer specifically denied making the exculpatory statement when arrested as attributed to him by defendant, defendant claims that during the year prior to his trial he knew Toomer would be an important witness. Despite that knowledge, defendant made little effort to locate Toomer, testified that he failed to inform his first attorney of this allegedly critical evidence, and told his trial attorney that Toomer was probably dead.

Although defendant promptly discharged his first attorney upon determining that she was not providing him with the defense he thought appropriate, defendant did not make any complaint about his trial attorney until after his self-described chance encounter with Toomer in jail after his conviction. These are hardly the actions of a defendant who considered a prospective witness critical to establishing his innocence. Such efforts as were taken to locate Toomer were insufficient to establish that he could not have been located prior to trial (*see People v Copeland*, 185 AD2d 280, *lv dismissed* 80 NY2d 902; *People v McCullough*, 275 AD2d 1018, *lv denied* 95 NY2d 936). Significantly, at the hearing, Toomer flatly contradicted defendant's claim of an exculpatory statement made contemporaneous to the arrest. Finally, although summarily discounted by the Supreme Court, the record amply supports a finding that the decision to forgo witnesses was a reasonable trial strategy to which defendant agreed. "A defendant who withholds evidence during the trial is not entitled to a new trial on the basis of the evidence thus withheld" (*People v Messina*, 73 AD2d 899, 900, *lv denied* 49 NY2d 1005). Concur—Rosenberger, J. P., Tom, Ellerin, Rubin and Buckley, JJ.